676 A.2d 204

**Elsie L. SHEAFFER, Eleanor I. Caylor, L. Larue Fairman, V. Lorraine Kunkle, I. Carroll Johnston and Inez J. Kelsey, Appellants,**

v.

**Sarah L. CARUSO and Lawrence Marra and William L. Stewart, his unknown heirs, devisees and assigns, Appellees.**

Supreme Court of Pennsylvania.

Argued March 6, 1996.

Decided May 21, 1996.

280

Roger T. Mechling, Kittanning, for Appellants.

Michael S. DeLaney, Indiana, for Appellees.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

FLAHERTY, Justice.

Elsie L. Sheaffer et al. (hereinafter heirs) are the heirs and assigns of Ethel Mae Stewart. They initiated the present

action to quiet title to the oil and gas located upon and under a tract of land which was conveyed by Ethel Mae Stewart to Gary L. Young and Sarah L. Caruso et al. (hereinafter buyers and possible claimants). The trial court held that the general warranty deed from Stewart to buyers did not convey any rights to oil and gas and that buyers and possible claimants were barred from asserting any right, title, lien or interest in the oil and gas. Superior Court reversed.

The deed in question, dated December 25, 1973, is a conveyance from Stewart to buyers of one hundred fifty acres, more or less, excluding certain acreage which had been conveyed to different grantees. The deed refers to this land as the first and second tracts. With respect to the oil and gas, Stewart's deed of December 25, 1973 contained the following language:

EXCEPTING AND RESERVING from First Tract and Second Tract all the coal and mining rights and the oil and gas as fully as the same have been excepted and reserved or conveyed by former owners.

Buyers and possible claimants contend that this language does not reserve oil and gas interests in the grantor. Heirs contend that the language does reserve oil and gas rights in the grantor, and in any event, construing the deed as a whole makes it clear that the oil and gas rights were not conveyed.

The rationale of the trial court's holding in favor of the heirs was twofold: first, that since the oil and gas estates had been severed from the surface estate more than 76 years ago and had followed different chains of ownership, the reservation clause was sufficient to reserve interest in the oil and gas to the grantor (i.e., the oil and gas had been excepted, reserved and conveyed by former owners, and by the terms of the present deed it was excepted and reserved now); and second, since the deed sets forth a description of the land conveyed which incorporates a description in a previous deed, and the previous deed reserves interest in the oil and gas, the oil and gas are reserved in the grantor.

Superior Court disagreed, holding that the reservation clause does not clearly express an intention to limit the fee, and must, therefore, be construed against the grantor. The court further concluded that the above reservation clause was included in the deed in order to limit the grantor's liability on the warranty of the deed, not to reserve an interest in the oil and gas to the grantor.

Our inquiry, then, is whether the reservation clause effectively reserved an interest in the oil and gas to the grantor, Ethel Mae Stewart. The clause, once again, states:

Excepting and reserving ... all the coal and mining rights and the oil and gas as fully as the same have been excepted and reserved or conveyed by former owners.

At the time this deed was drafted, Ethel Mae Stewart, the grantor, owned the entire surface rights as well as two-thirds of the oil and gas.[1]

■ Superior Court's rationale in large part was based on its reading of a number of cases in which mining rights were

1. The relevant facts with respect to the chain of title as recited by the trial court and as stipulated by the parties are that in 1891 John Stewart died seized in fee of a certain tract of land in Washington Township, Indiana County, containing approximately 151 acres, 70 perches. He devised this land to his sons, Michael C. Stewart and John R. Stewart. In May of 1918 the sons made an amicable partition of this land by exchanging deeds in which each received 75 acres, 115 perches, hereinafter referred to as Tract 1 and Tract 2. However, in both deeds, the oil and gas were excepted and reserved as follows:

Also Excepting and Reserving from the operation of this deed all the gas and oil with the right to bore for said gas, with the right of way for pipe lines etc. The said gas, oil, etc. to be continued to be held by said Michael C. Stewart and John R. Stewart as tenants in common, each the undivided one-half part.

Over the next 47 years, the surface interests and the oil and gas interests in Tract 1 and Tract 2 passed through a number of hands until 1965, when John Lloyd Stewart became the owner of all 151.51 acres of land and two-thirds of the oil and gas interest in Tract 1 and Tract 2. The remaining one-third interest in the gas and oil was owned by William L. Stewart, brother of John Lloyd Stewart. At the time the case was decided, William L. Stewart was deceased and the whereabouts of his heirs, devisees and assigns were unknown. They remain unknown.

At John Lloyd Stewart's death in 1969, his wife, Ethel Mae Stewart, became the sole owner of Tracts 1 and 2 together with a two-thirds interest in the oil and gas rights. By deeds dated July 1, 1970, October

in dispute. In *Heidt v. Aughenbaugh Coal Co.*, 406 Pa. 188, 176 A.2d 400 (1962), for example, the dispute was whether deep or strip mining was permitted under the terms of a lease which had been incorporated into a deed. That issue is not involved in this case as the method of mining was clearly stated. The deed of 1918 in which the oil and gas was originally separated from the fee stated:

Also Excepting and Reserving from the operation of this deed all the gas and oil with the right to bore for said gas, with the right of way for pipe lines etc. The said gas, oil, etc. to be continued to be held by said Michael C. Stewart and John R. Stewart as tenants in common, each the undivided one-half part.

The method of extraction, drilling, was incorporated by reference in the present deed. Thus, we do not agree with Superior Court that the exception and reservation clause of the deed was "nonspecific." [2]

■ We also disagree with Superior Court's conclusion that the purpose of the exception and reservation clause was

24, 1973, December 17, 1973 and December 25, 1973, Ethel Mae Stewart conveyed 1.02 acres and 10.18 acres (part of Tract 1) to Thomas L. Kelsey and Inez J. Kelsey; 18.7 acres (part of Tract 1) to Donald Shotts and Rose Shotts; 2 acres (part of Tract 2) to Thomas L. Kelsey and Inez J. Kelsey; and the remaining parts of Tracts 1 and 2 to Gary L. Young and Sarah L. Caruso. It is the conveyance to Young and Caruso that is at issue in this case.

Each of these deeds reserved the oil and gas "as fully as the same have been excepted and reserved or conveyed by former owners." In 1984, the Tax Claim Bureau of Indiana County conveyed to Lawrence Marra all the property purchased by Gary L. Young and Sarah L. Caruso. Subsequently, in 1987, an order of court was entered stating that the parcels acquired by Lawrence Marra were to be held by Lawrence Marra and Sarah L. Caruso, as tenants in common, each party holding an undivided one-half interest.

2. This analysis is supported by *New Charter Coal Co. v. McKee*, 411 Pa. 307, 314, 191 A.2d 830, 834 (1963), a case cited by the court below, which held generally that in construing reservation clauses in deeds, ambiguities must be construed from the entire written instrument and the circumstances:

[I]t is not enough that the wording of the mining rights supports a construction that strip mining is allowable. As we said in *Commonwealth v. Fitzmartin*, [376 Pa. 390, 102 A.2d 893], at page 393: "Where a deed or agreement or reservation therein is obscure or

only to protect the grantor against liability which might arise under the general warranty deed. By using the term "excepting,"[3] the grantor excluded from the conveyance interests in the land or minerals which she did not own, thus protecting herself from liability under the warranty of the deed. By using the term "reserving,"[4] she created in herself an estate in the oil and gas. Had the grantor intended only to exclude oil and gas interests which had been conveyed previously to persons other than the grantor, the usual way to do that would be to use only the term "excepting." By using both terms, she protected herself from liability under the general warranty deed and created in herself an estate in the oil and gas.

Because the language in question was sufficient to reserve in the grantor an estate in the oil and gas, the order of

ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the *entire written instrument* there in question, but also from a consideration of the subject matter and of the surrounding circumstances. . . ."
(Emphasis in original.) In *New Charter*, New Charter Coal Co. owned the coal rights under a parcel of land owned by the McKees, subject to reservation in the McKees of a certain strip of coal. New Charter Coal Co. sought permission to strip mine for their coal, which was located beneath the reserved coal owned by the McKees. This court held that strip mining could not have been intended where coal which had been reserved lay between the surface and the granted coal, even though the grantors had waived their right to support of the surface and gave to the person holding the coal rights the right to remove "all and every particle of said coal" without responsibility for damage to the surface caused by removal of the coal. 411 Pa. at 313, 191 A.2d 830. The rationale for the holding was that strip mining would necessarily involve removing reserved coal lying between the surface and the granted coal, but there was no provision in the deed to separate the reserved coal from the other coal.

In that case as in this one, an examination of the entire transaction, here the entire chain of title, was required in order to interpret the deed.

3. Exceptions operate to exclude from the property conveyed some "existing thing or things" which would otherwise have been conveyed. P. Wood, "Deeds of Conveyance in Pennsylvania," 21 P.S. at 22.

4. Reservations in deeds, unlike exceptions, operate to create an estate in the grantor. "A reservation creates a new right or interest in the grantor, such as a right of way over the property, which had no previous existence as such." P. Wood, "Deeds of Conveyance in Pennsylvania," 21 P.S. at 22.

Superior Court is reversed and the order of the Court of Common Pleas of Indiana County is reinstated.[5]

NIX, C.J., did not participate in the consideration or decision of this matter.

NIGRO, J., files a concurring opinion.

NIGRO, Justice, concurring.

I concur with the conclusion of the Majority that the deed at issue does not convey oil and gas rights to the buyers. I write separately, however, because I reach this conclusion through slightly different reasoning. When a deed contains an ambiguous reservation clause, the parties' intentions are determined not only from the written instrument but also from the surrounding circumstances. *New Charter Coal Co. v. McKee*, 411 Pa. 307, 314, 191 A.2d 830, 834 (1963). Here, the reservation clause dictated that the parties reserve the oil and gas rights in the same way that former owners had reserved them. Only by looking at the prior deeds can we determine the parties' intent. *See Johns v. Castellucci*, 264 Pa.Super. 591, 401 A.2d 753 (1979)(deed conveying coal rights as conveyed by prior deed construed by looking at prior deed). The trial court correctly considered the prior deeds and found that the oil and gas rights were severed from the land in 1918 and followed separate chains of ownership. Every deed in the chain of title excepted and reserved the oil and gas rights. In this context, which the Superior Court failed to consider, the deed did not convey the oil and gas rights to the buyers.

---

**5.** The trial court's order also barred William L. Stewart, his unknown heirs, devisees and assigns from asserting any right, title, lien or interest in the oil and gas at issue. The trial court observed that although an appearance was entered for William L. Stewart et al., no person appeared, and the court, therefore, quieted title in all of the oil and gas in the plaintiffs in this action.