J. A18021/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BLACK WOLF ROD & GUN CLUB, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL DEVELOPMENT | : | |
| CORPORATION, PENNLYCO, LTD., | : | |
| SOUTHWESTERN ENERGY | : | No. 1972 MDA 2015 |
| PRODUCTION COMPANY, AND | : | |
| VIRGINIA ENERGY CONSULTANTS, LLC | : | |

Appeal from the Order Entered October 19, 2015,
in the Court of Common Pleas of Lycoming County
Civil Division at No. 15-00411

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STEVENS,* P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 25, 2016**

Appellant Black Wolf Rod & Gun Club, Inc. ("Black Wolf"), appeals from the October 19, 2015 order entered in the Court of Common Pleas of Lycoming County that granted the preliminary objections in the nature of a demurrer of appellees International Development Corporation ("IDC"); Pennlyco, Ltd. ("Pennlyco"); and Southwestern Energy Production Company

---

\* Former Justice specially assigned to the Superior Court.

("SWN")[1] (collectively, "appellees") and dismissed Black Wolf's complaint with prejudice.[2]  We affirm.

The trial court set forth the following in its October 19, 2015 order,[3] granting preliminary objections in the nature of a demurrer:

> On February 11, 2015, Black Wolf filed a one count complaint seeking to quiet title pursuant to Pa.R.C.P. 1061 and the Declaratory Judgment Act, 42 Pa.C.S.A. §§ 7532, et seq. as to the oil, gas and other minerals ("Subsurface Rights") underlying property known as warrant numbers 1602 and 1605, consisting of about 1,717.37 acres located in Pine and Jackson Townships in Lycoming County (collectively, "Property").[Footnote 2]  Black Wolf claims ownership in fee simple to the Property by virtue of a deed from B.L. Miller, et ux., et al[.] to Black Wolf dated April 26, 1926, recorded in the Lycoming County Recorder of Deeds at Deed Book 264, Page 395 ("1926 Deed").  Black Wolf's source of title to the Property arises from a serious [sic] of deed transfers, summarized as follows.
>
>> [Footnote 2]  SWN references the Property as consisting of about 1,958.5 acres.
>
>> 1893 Deed from Samuel P. Davidge, et[] ux., et al., to Elk Tanning Co.[;]

---

[1] The record reflects that effective November 24, 2014, Southwestern Energy Production Company became SWN Production Company, LLC.

[2] The record reflects that Virginia Energy Consultants, LLC, did not join in the preliminary objections of IDC, Pennlyco, and SWN.

[3] The record reflects that the trial court dated the order granting preliminary objections in the nature of a demurrer October 16, 2015, but filed the order on October 19, 2015.

1894 Treasurers Deed (tax sales) to G.W. Childs as to a portion of Warrant No. 1605;

1898 Quit Claim Deed transferring above tracts from G.W. Childs to Elk Tanning Co.;

1903 Deed from Elk Tanning Co. to Central Pennsylvania Lumbar [sic] Company (["]CPLC["]);

1906 Treasurer Deed (tax sale) to Calvin H. McCualey, Jr., as to Warrant No. 1602;

1908 Treasurer Deed (tax sale) to Calvin H. McCualey, Jr. as to Warrant No. 1605;

1908 Quitclaim Deed from Calvin H. McCualey, Jr., et[] ux. to CPLC as to Warrant 1602;

1910 Quitclaim Deed from Calvin H. McCualey, Jr., et[] u[x]. to CPLC as to Warrant 1605;

1925 Deed from CPLC to R.N. Miller, et[] ux., et[] al.;

1926 Deed from B.L. Miller, et ux., et al[.] to Black Wolf.

The [1893] Deed provides the following in pertinent part.

Excepting and reserving, however from this conveyance on all the lands described above for the benefit of the said parties of the first part, their heirs and assigns forever, all minerals, oils and gases in, upon or under said lands with the perpetual right of ingress egress and

regress over, upon and across said lands
for the purpose of mining, boring for and
removing said minerals, oils or gases.

The parties agree that the 1893 Deed from Samuel P. Davidge created a horizontal severance of the Subsurface Rights. However, since the severed oil and gas interests were not separately assessed from the surface of the property and since the Property constituted unseated lands pursuant to An Act Directing the Mode of Selling Unseated Lands for Taxes, Act of 3 April 1804, 4 Sm. L. 201, as amended ("1804 Act"), the effect of the tax sales under the 1804 Act was that the horizontal severance was extinguished by the tax sales of the Property to Calvin H. McCauley [sic] and the surface and subsurface estates of the Property merged. As a result, Warrant 1602 and Warrant 1605 were conveyed to CPLC with the Subsurface Rights in 1908 and 1910 respectively.

All parties claim title to the Property from CPLC and all parties agree CPLC owned the Subsurface Rights to the Property by the conveyances in 1908 and 1910. [Appellees] contend that the 1925 Deed severed and reserved the Subsurface Rights in and under the Property to CPLC in the same manner that the 1893 Deed did for Samuel P. Davidge. Black Wolf contends that the 1925 Deed from CPLC to R.N. Miller, et[] ux., et[] al. did not effectuate a severance of the Subsurface Rights because the 1925 Deed excepted and reserved the Subsurface Rights only "as fully as" those rights were excepted and reserved by the 1893 Deed and the Subsurface Rights excepted and reserved in the 1893 Deed were subsequently extinguished by the tax sales of 1908 and 1910.

[The] 1925 Deed from CPLC to R.N. Miller, et[] ux., et[] al. states the following[:]

THE two pieces of land above described
being part of the same lands conveyed
by Samuel P. Davidge et[] al. to the

- 4 -

Elk Tanning Company by deed dated December 7th, 1893 recorded in the office for the Recording of deeds in and for the County of Lycoming in Deed Book 600 No. 139 at page 259 on January 19th, 1894 and part of the same lands conveyed by the Elk Tanning Company to the Central Pennsylvania Lumber Company by deed dated May 25, 1903, recorded in the office for the recording of deeds in and for the County of Lycoming in Deed Book 183 at page 328 on June 12, 1903. This conveyance is subject to all the reservations in said last recited deed.

EXCEPTING AND RESERVING, however, from this conveyance on all the lands above described, all minerals, oils, and gases in, upon or under said lands, with the perpetual right of ingress, egress and regress over, upon and across said lands, for the purpose of mining, boring for and removing said minerals, oils, or gases *as fully as* said minerals, oils and gases and rights were excepted and reserved in deed from Samuel P. Davidge et[] al. to the Elk Tanning Company dated December 7th, 1893 above recited.

ALSO excepting and reserving unto the Central Pennsylvania Lumber Company, its successors and assigns all necessary rights of way for wagon roads, sled roads, log slides and tramroads through[,] over and across the lands above described for the purpose of getting to and from other lands now owned by the Central Pennsylvania Lumber Company, or hereafter acquired by said Lumbar [sic] Company.

THIS conveyance is made and delivered in pursuance of an agreement between

the Central Pennsylvania Lumbar [sic] Company, of the first part and R.N. Miller and B.L. Miller, co-partners of the second part, dated June 24, 1920. (emphasis added)

Black Wolf contends ownership of the Subsurface Rights by the conveyance by the 1926 Deed from B.L. Miller to them. [Appellees] contend that the Millers never had ownership of the Subsurface Rights under the 1925 Deed and therefore had no interest to convey to Black Wolf. Instead, [appellees] claim ownership of the Subsurface Rights through a serious [sic] of deed transfers, beginning with the 1942 Deed from CPLC. Pennlyco claims ownership of an undivided 12.5% interest in the Subsurface Rights to the Property by Deed in 1984 and corrective deed in 1992 from Kenneth F. Yates to Pennlyco. Similarly, IDC claims ownership of an undivided 87.5% interest in the Subsurface Rights to the Property by Deed dated August 3, 2005 from Gerard J. Barrios, Administrator for the Estate of Clarence W. Moore to IDC. Finally, SWN and Virginia Energy claim an interest in the Subsurface Rights underlying the Property pursuant to an Oil and Gas Lease between IDC and Virginia Energy, dated December 1, 2005, recorded at Book Volume 6197, Page 327.

*Preliminary Objections*

On March 5, 2015, IDC filed a preliminary objection in the nature of a demurrer to the complaint in essence contending that the deeds of record established IDC's interest in the Subsurface Rights by establishing that the Subsurface Rights were severed by the 1925 Deed and reserved by CPLC and subsequently transferred to them through a chain of title in the amount of 87.5%. On March 18, 2015, [SWN] filed preliminary objections in the nature of a demurrer on the grounds that the action must be commenced by an ejectment action rather than a quiet title action, that Black Wolf failed to name and joined [sic] all necessary parties and

that the exception and reservation language in the 1925 Deed reserved the Subsurface Rights in and under the Property to CPLC, from whom a chain of title resulted in their lease to the rights. On March 26, 2015, [Pennlyco] joined the preliminary objections of IDC and SWN.

Order of court, 10/16/15, at 1-5.

Appellant raises the following issue for our review:

Did the Trial Court err when it sustained a preliminary objection to the Complaint raised pursuant to Pa.R.A.P. [sic] 1028(a)(4) and dismissed the Complaint with prejudice based upon the Trial Court's conclusion that a provision addressing oil, gas and minerals in a Deed executed in 1925 was an affirmative exception and reservation of the oil, gas and minerals underlying the property at-issue, when such conclusion was not supported by the language in the instrument itself or the circumstances surrounding its execution?

Appellant's brief at 4.

We set forth our standard of review, as follows:

When reviewing the dismissal of a complaint based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

***B.N. Excavating, Inc. v. PBC Hollow-A, L.P.***, 71 A.3d 274, 277-278 (Pa.Super. 2013) (citations omitted). "A demurrer should be sustained only when the complaint is clearly insufficient to establish the pleader's right to relief." ***Id.*** at 278 (citation omitted).

Here, no dispute exists that the 1893 deed from Samuel P. Davidge to Elk Tanning Company horizontally severed the land and that the language of that conveyance created a subsurface estate in favor of Davidge and conveyed a surface estate to Elk Tanning Company. The parties also agree that under then-existing law, the subsequent tax sales in 1906 and 1908 merged the surface and subsurface estates. ***See Herder Spring Hunting Club v. Keller***, 93 A.3d 465 (Pa.Super. 2014), ***affirmed***, 2016 Pa. LEXIS 1512 (Pa. July 19, 2016) (confirming that under the tax plan in place in the 1800s, a tax sale of land, absent proof of payment of tax within two years, caused the surface and subsurface land rights to merge). Therefore, as Black Wolf concedes, "the core question in the case at-bar regrading [sic] the ownership of the oil, gas and minerals underlying the Property, is focused on evaluating a single instrument: the 1925 Deed." (Appellant's brief at 14.)

When construing a deed,

> a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot

be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it . . . . To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Pa. Servs. Corp. v. Tex. E. Transmission, LP*, 98 A.3d 624, 630 (Pa.Super. 2014), quoting *Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa.Super. 2005). Whether a deed is ambiguous is a question of law for the court. *Pa. Elec. Co. v. Waltman*, 670 A.2d 1165, 1169 (Pa.Super. 1995). When interpreting an unambiguous deed, a court is limited to the deed itself and cannot consider parol evidence. *Id.*

Here, Black Wolf complains that the language of the subsurface rights clause in the 1925 deed was ineffective to horizontally sever the property and reserve the subsurface rights in favor of the grantor, CPLC, for four reasons. First, Black Wolf claims that because the 1925 subsurface rights clause referred back to the 1893 subsurface rights clause and the 1893 subsurface rights were extinguished and merged with surface rights as a result of the subsequent tax sales and were, therefore, nonexistent, the 1925 subsurface rights clause that referred back to that nonexistent 1893 clause renders the 1925 subsurface rights clause ineffective. Second, Black

Wolf contends that because the 1925 subsurface rights clause referred back to and used language from the 1893 deed, the 1925 subsurface rights clause demonstrates CPLC's intent to reserve the subsurface rights in accordance with the 1893 conveyance which was a nullity and, therefore, renders the 1925 subsurface rights reservation a nullity. Third, Black Wolf argues that because the 1925 access road clause is unambiguous and the subsurface rights clause is ambiguous, this is "proof that the intent was not to affirmatively except and reserve those interests." (Appellant's brief at 25.) Finally, Black Wolf complains that because the 1925 access road clause contained words of heirship and the 1925 subsurface rights clause did not, this is "proof" that the 1925 subsurface rights clause "did not function as an affirmative exception and reservation of the oil, gas and minerals." (**Id.** at 29.)

Transfer of the surface estate with the intent to retain rights in the mineral estate requires explicit deed language. **See Sheaffer v. Caruso**, 676 A.2d 204 (Pa. 1996) (holding that by using the term "reserving," [in the deed] [the grantor] created in herself an estate in the oil and gas"). Language such as the following has been held to be sufficient to reserve a subsurface estate:

> EXCEPTING AND RESERVING from First Tract and Second Tract all the coal and mining rights and the oil and gas as fully as the same have been excepted and reserved or conveyed by former owners.

**Id.** at 205.

Here, in construing the plain meaning of the 1925 deed, the trial court concluded that the subsurface rights clause undoubtedly reserved subsurface rights as a result of the "excepting and reserving" language and that by using the words "as fully as," the grantor intended to reserve those subsurface rights in the same manner as was done by the grantor in the 1893 deed. Our supreme court's decision in **Sheaffer**, **supra**, supports the trial court's interpretation of that language.

Additionally, the trial court interpreted the access road clause contained in the 1925 deed as creating an easement. Although Black Wolf takes issue with inclusion of words of heirship within that clause while those words are excluded from the subsurface rights clause, the trial court recognized that the 1893 deed created no easement. As such, unlike the subsurface rights clause, CPLC was unable to refer back to the 1893 deed to except and reserve certain rights of way as fully as were excepted and reserved in a prior estate.

Although Black Wolf has advanced many theories as to what the grantor **may** have intended by the 1925 deed language, the trial court properly ascertained the **meaning** of the words used in the deed. Consequently, it is certain that upon the facts averred, the law would not permit Black Wolf to recover. Therefore, the trial court neither abused its discretion nor committed an error of law when it dismissed Black Wolf's complaint based upon preliminary objections in the nature of a demurrer.

J. A18021/16

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2016

- 12 -