J-A02019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HAROLD K. WALDMAN AND DIANE R. WALDMAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES D. LUKETICH AND CHRISTINE LUKETICH | : | No. 685 WDA 2025 |
| Appellants | : | |

Appeal from the Judgment Entered May 15, 2025
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-008831

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:　　　　　**FILED:  February 18, 2026**

James D. Luketich and Christine Luketich (the Luketiches or Defendants) appeal from the judgment entered in favor of Harold K. Waldman (Mr. Waldman) and Diane R. Waldman (collectively, the Waldmans or Plaintiffs), after granting the Waldmans' post-trial motion and entering judgment notwithstanding the verdict (JNOV) on the Waldmans' claims for declaratory judgment, quiet title, and ejectment.  After careful review, we affirm.

The parties are neighbors.  The Waldmans' claims involve their right to use an Easement (the Easement or Access Easement) on the Luketiches' property to access their own property, and the Luketiches' alleged violation of setback restrictions barring the erection of structures near the parties' common boundary line.

Before trial, the parties agreed to stipulations of fact regarding their parcels' complex title history, which involves a plethora of recorded instruments. **See** Joint Stipulation, 12/11/24. As the stipulated facts and instruments are largely dispositive of the issues on appeal, we quote them at length:

1. [The Waldmans and the Luketiches] reside in the Borough of Fox Chapel, Allegheny County, Pennsylvania.

2. The Waldmans own the property located at 10 Sweet Water Lane, Pittsburgh, Pennsylvania 15238 ("Waldman Property"), which shares a common north/south border with the Luketich residence, located at 30 Sweet Water Lane, Pittsburgh, Pennsylvania 15238 ("Luketich Property").

Judge Della Vecchia Opinion, 12/27/24, at 2.[1, 2]

*1985 Stoecklein Plan of Lots*

9. Bernard E. Stoecklein, Jr. and Suzanne C. Stoecklein (the "Stoeckleins") were the original developers of the several properties from which the parties hereto derive their titles. The Stoeckleins caused a plan of lots known as the "Stoecklein Plan of Lots," dated April 1985, to be recorded in the Allegheny County Division of Real Estate … ("Stoecklein Plan").

10. What is now the Luketich Property was formerly "Parcel 4" [or "Lot 4"] of the Stoecklein Plan….

_____

[1] The Honorable Michael Della Vecchia presided over the non-jury trial. Judge Della Vecchia retired shortly thereafter, and the Honorable Chelsa Wagner heard the parties' post-trial motions.

[2] In his opinion, Judge Della Vecchia adopted the parties' stipulations and reproduced them verbatim. **See** Judge Della Vecchia Opinion, 12/27/24, at 2-11. The stipulations incorporated the referenced instruments in their entirety. **See generally id.**

11. The Stoecklein Plan consisted of five total parcels: "Parcel 1," "Parcel 2," "Parcel 3," a "Common Open Space," and "Parcel 4."[3]

12. The Stoecklein Plan included a 20-foot easement for ingress, egress, and regress which ran contiguous to a 10-foot utility easement; those two easements were collectively referred to as the "Extension" and ran over property designated as the "Common Open Space."

* * *

14. This Extension provided access from Sweet Water Lane through the Common Space to Lot 4.

*1985 Declaration of Protective Covenants*

15. A Declaration of Protective Covenants for the property comprising the Stoecklein Plan dated August 20, 1985, was recorded … ("1985 Declaration" or "Declaration")….[4]

Judge Della Vecchia Opinion, 12/27/24, at 3-5 (footnotes added).

*Amendments to the Stoecklein Plan*

17. Parcel 4 of the Stoecklein Plan was later incorporated into a series of subsequent plans:

   i. "Stoecklein Plan No. 2," which was recorded on December 21, 1988….

_____

[3] The land comprising the future Waldman Property was not within the original Stoecklein Plan.

[4] Pertinently, the 1985 Declaration's covenants included Section 4.4, which provides, in relevant part, as follows:

   4.4 <u>Setback Lines</u>. … No buildings, structure, fence, hedge, out building or appurtenance of any nature shall be located closer than 75 feet from the sidelines and rear property lines of Parcels No. 1, 2, 3 and 4 in the Stoecklein Plan of Lots.

1985 Declaration, § 4.4.

- 3 -

ii. "Stoecklein Plan No. 3," which was recorded on August 29, 1991….

a. **Stoecklein Plan No. 3 created three parcels** (A, B, and C) **which now comprise the Waldman Property** (A), **the Luketich Property** (B) and the Kelley Property (C).

b. Stoecklein Plan No. 3, renamed Parcel 4 of the Stoecklein Plan as Parcel "B."

c. **Said plan created a 40-foot access easement along and within the southerly boundary of Parcel "B"** [**(the Easement)**].[5]

iii. "Revised Stoecklein Plan No. 3," which was recorded on January 30, 1992….

a. **This plan created Parcel A-1** [**(the Waldman Property)**]**, which was to be conveyed to the Waldmans, and Parcel B-1** [**(the Luketich Property)**]**, which was still owned by the Stoeckleins. In this plan, the "Access Easement"—which previously existed in the Stoecklein Plan No. 3—was redesignated as an "Access and Utility Easement," although it remained as 40 feet along and within the southerly boundary of Parcel B-1.**

iv. "Revised Stoecklein Plan No. 3, Amended," which was recorded on August 26, 1992….

18. **The 40**[**-foot**] **Access and Utility Easement** [**(the Easement)**] **has as its southern boundary the common property line of the Waldman Property and Luketich Property. The entirety of the** [] **Easement lies on the Luketich Property.**

Judge Della Vecchia Opinion, 12/27/24, at 5-8 (original footnote omitted; emphasis and footnote added).

---

[5] The recorded instruments describe the Easement as a "Right of Way." ***See*** 1992 Agreement, § 3. "A right of way is an easement[.]" ***Amerikohl Mining Co. v. Peoples Nat. Gas Co.***, 860 A.2d 547, 550 (Pa. Super. 2004).

*1992 Agreement Between Owners of Parcels A-1 and B-1, Now the Waldman and Luketich Properties*

19. Shortly after the "Revised Stoecklein Plan No. 3, Amended" was recorded, the Stoeckleins, the Waldmans, and Richard and Rhea Sweet … (the "Sweets") entered into an October 5, 1992, Agreement, which is of record in the Allegheny County Division of Real Estate … (the "1992 Agreement")….

* * *

21. At the time that these parties entered into the 1992 Agreement, the Stoeckleins were the record owners of Parcel A-1, the Waldmans were the equitable owners of Parcel A-1 pursuant to an Agreement of Sale, and the Sweets owned Parcel B-1, which was formerly part of the original Parcel 4.

*1992 Waldman Property Acquisition*

22. The Stoeckleins conveyed the Waldman Property (Parcel A-1 in the "Revised Stoecklein Plan No. 3, Amended") to the Waldmans by deed dated October 22, 1992…

*[The Luketiches'] Acquisition of the Luketich Property*

23. The Sweets conveyed the Luketich Property (Parcel B-1 in the "Revised Stoecklein Plan No. 3, Amended") to Defendant James D. Luketich by deed dated August 22, 2001, which deed was recorded on August 22, 2001….

24. James D. Luketich quitclaimed his interest in the Luketich Property to himself and his wife[, Christine Luketich,] by instrument dated October 22, 2010, which was recorded on November 10, 2010….

*2002 Waldman Plan*

25. In 2002, the Waldmans and the Luketiches agreed to swap certain [small] portions of their respective properties in order to "square them off."  The result of this agreement was the recording of the Waldman Plan….  The Waldman Plan contains the 40[-foot] Access and Utility Easement [(the Easement)] along the southerly border of and within the Luketich Property.

26. The deed conveying a small portion of the Luketich Property to the Waldmans was dated May 20, 2002….

27. The deed conveying a small portion of the Waldman Property to the Luketiches was also dated May 20, 2002….

Judge Della Vecchia Opinion, 12/27/24, at 8-10.

The Waldman Property was undeveloped when the Waldmans acquired it in 1992. *See* N.T., 12/12-13/24, at 91. Soon thereafter, the Waldmans built their home and, pertinently, constructed a driveway through the southeast corner of the Easement, which connected their otherwise landlocked parcel with Sweet Water Lane. *See id.* at 91, 107-108.

In 2019, a fire significantly damaged portions of the Luketich home. *Id.* at 86, 221. During reconstruction of their home, the Luketiches rebuilt a garage and gymnasium structure. *Id.* at 87-89, 221-24. Importantly, this structure is situated approximately 63 feet from the parties' property line. *Id.* at 85, 219; Exhibit Y (Waldman FMG Survey, 12/9/24). No portion of it lies within the Easement. *See* Waldman FMG Survey, 12/9/24.

As summarized in Judge Wagner's opinion,

[t]he crux of [the parties'] dispute is Plaintiffs' contention that the Defendants, as owners of the servient tenement, have constructed impediments within the Access Easement and the [75-foot setback established in the 1985 Declaration]. These violations, all [of] which Plaintiffs assert having objected to, include the erection of a garage and a gymnasium on the Luketich Property. Additionally, Plaintiffs complain that Defendants have effectively

obstructed and prevented their use of the Access Easement, for example by failing to remove a fence.[6]

These matters came to a head when, in 2020, Plaintiffs applied to the Fox Chapel Borough Environmental Advisory Council for permission to construct a gravel driveway within the confines of the Access Easement to provide ingress and egress to the rear portion of the Waldman Property.[7]  N.T., 12/12-13/24, at 21, 89. Defendants communicated their opposition Plaintiffs' plans, which included the placement of "No Trespass" signs and voicing to the Environmental Advisory Council that Plaintiffs did not have permission or legal right to install the access road.  *Id.* at 244; Exhibit BB (Fox Chapel Borough Council Meeting Minutes, 10/19/20).  Ultimately, the Environmental Advisory Council failed to approve Plaintiffs['] request.  Plaintiffs blame the Defendants' opposition, stating that "but for" Defendants' interjection into the process, their plans for an access road would have received the

_____

[6] The Waldmans assert the Luketiches "have erected, installed, or maintained numerous encroachments and obstructions within the Access Easement," including

> (a) a fence which runs parallel with the Access Easement from the edge of the existing driveway to the western property line of the Luketich Property approximately 13 feet from the northern boundary of the Access Easement; (b) a 3-foot-high wire fence from the northern boundary of the Access Easement to the southern boundary of the Access Easement just west of the paved portion of the Access Easement; (c) numerous trees and/or shrubs …; (d) concrete steps; (e) a gravel path; (f) a stone landscape wall; (g) a large earthen berm with trees; (h) a wood pile; (i) a stone paved walk; (j) a stone pillar at gate; (k) a brick pillar with mailbox and security keypad; (l) a hedge row; and (m) a cobblestone curb.

Waldmans' Brief at 16-17 (citing Waldman FMG Survey, 12/9/24; Exhibit S (Waldman FMG Survey, 9/20), Exhibit W (photos of parties' properties); N.T., 12/12-13/24, at 24-28, 91, 140, 254-55).

[7] The Waldmans "wish to construct a road to access the rear of their large, spacious property[,] where they intend to construct a guest house."  Judge Wagner Opinion, 8/17/25, at 3 (unpaginated).

Council's blessing and Plaintiffs could have completed the mandated approval process.

Judge Wagner Opinion, 8/17/25, at 4-5 (unpaginated) (record citations modified; footnotes added).

The Environmental Advisory Council withheld approval of the Waldmans' application, pending their compliance with "three items":

- Mr. Waldman present evidence of his legal right to install the driveway within the … [E]asement.

- Mr. Waldman replace[] twelve hardwood trees (having already replanted 16).

- The gravel driveway's width is reduced to fourteen feet instead of sixteen feet.  Larger stones will be used at the driveway's surface, and the infiltration trench is moved so that it is not directly underneath the 14-foot[-]wide driveway and runs parallel to the southerly side of the driveway.

Fox Chapel Borough Council Meeting Minutes, 10/19/20, at 2 (unpaginated).

On August 18, 2020, the Waldmans filed their complaint in the instant matter.  The complaint alleged

causes of action sounding in declaratory judgment, quiet title and ejectment, all surrounding the Plaintiffs' purported rights of use and access to [the Easement] (counts I, II, V, VI, and VII); written and recorded covenants prohibiting building within … [the] setback line [set forth in Section 4.4. of the 1985 Declaration] (counts III, VII), and enforcement of obligations for maintenance of paving (count IV).  …  Defendants filed an answer and new matter to the complaint.  Defendants did not assert any counterclaims in response.

Judge Wagner Opinion, 8/17/25, at 3 (unpaginated) (some capitalization modified).

Other judges presided over the matter until April 26, 2024, when it was assigned to Judge Della Vecchia. Order, 4/26/24. Judge Della Vecchia appointed Alfred Watterson, Esquire (Mr. Watterson), as "real estate title advisor to the [c]ourt…." Order, 5/22/24. Judge Della Vecchia and Mr. Watterson conducted a site visit to view the parties' properties. *See* N.T., 12/12-13/24, at 14, 39.

The matter proceeded to a non-jury trial on December 12-13, 2024. Judge Della Vecchia heard testimony from Mr. Waldman and James D. Luketich, as well as expert testimony from Mr. Watterson and the Luketiches' title expert, William Sittig, Esquire.[8]

Pertinently, Mr. Waldman testified that any future plan to build a driveway through the Easement would have to comply with the alterations Fox Chapel Borough specified in connection with his 2020 application. N.T., 12/12-13/24, at 32-33; *see also* Fox Chapel Borough Council Meeting Minutes, *supra*. Mr. Waldman indicated he has not engaged an engineer to prepare such a plan. N.T., 12/12-13/24, at 32-33. Mr. Waldman agreed that he has "no immediate plans to build or pave within" the Easement. *Id.* at 32.

---

[8] The Waldmans sought to introduce testimony from their own title expert, but Judge Della Vecchia excluded the testimony because the Waldmans did not produce their expert's report to the Luketiches until the eve of trial. *See* N.T., 12/12-13/24, at 4-17.

- 9 -

On December 18, 2024, the parties filed proposed findings of fact and conclusions of law. On December 27, 2024, Judge Della Vecchia issued a memorandum opinion and order denying the Waldmans' requested relief and dismissing their complaint. Judge Della Vecchia Opinion, 12/27/24, at 11.[9]

After recounting the stipulated facts, Judge Della Vecchia's opinion set forth the following analysis and conclusion:

> The scope of an express easement must be determined in strict conformity with the intentions of the original parties as set forth in the grant of the easement. ***McNaughton Properties, LP v. Barr***, 981 A.2d 222, 227 (Pa. Super. 2009). Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary and for the reasonable and proper enjoyment of the thing granted. ***Zettlemoyer v. Transcontinental***, 657 A.2d 920, 924 (Pa. 1995). The Waldmans have the right to use the [E]asement for utilities and access[,] but they have not proven an immediate need. At trial, the Waldmans did not offer evidence to support a contention that they have been denied reasonable access to their property over the paved portion of the [E]asement[, *i.e.*, the Waldmans' long-existing driveway]. Moreover, **the Waldmans admitted that they have no immediate plans to improve the undisturbed portions of the [E]asement**. Therefore, until the Waldmans can demonstrate a need to access their property beyond their current reasonable access, the [c]ourt will not grant the relief requested.

Judge Della Vecchia Opinion, 12/27/24, at 11 (emphasis added). **The foregoing constitutes the entirety of Judge Della Vecchia's analysis. To the extent this analysis may be said to include factual findings, it**

---

[9] Though dated December 27, 2024, Judge Della Vecchia's opinion and order was docketed on December 30, 2024.

- 10 -

**constitutes Judge Della Vecchia's only factual findings beyond the stipulated facts.**

Judge Della Vecchia retired effective January 1, 2025. On January 9, 2025, the trial court's civil administrative judge assigned the instant matter to Judge Wagner.

On the same date, the Waldmans timely filed a motion for post-trial relief. In their motion, the Waldmans argued Judge Della Vecchia erred as a matter of law in concluding the Waldmans must demonstrate a "need" to use the Easement. Waldmans' Post-Trial Motion, 1/9/25, ¶¶ 41-48. The Waldmans further argued Judge Della Vecchia erred as a matter of law in concluding the Waldmans were not entitled to use the entire Easement. *Id.*, ¶¶ 49-60. Finally, the Waldmans argue Judge Della Vecchia erred in "failing to render a determination" on their claims regarding the 75-foot setback restriction established in the 1985 Declaration. *Id.*, ¶ 64.

On January 19, 2025, the Luketiches filed their own motion for post-trial relief, requesting that Judge Della Vecchia's decision be affirmed or, in the alternative, modified via a proposed order that would "merely elaborate" on the decision but "would not change or add anything…." Luketiches' Post-Trial Motion, 1/19/25, ¶ 114. The parties filed briefs in support of their respective positions. On April 8, 2025, Judge Wagner heard oral argument.

On May 15, 2025, Judge Wagner entered an order granting the Waldmans' motion for post-trial relief, vacating Judge Della Vecchia's opinion and order, and entering JNOV

> in favor of Plaintiffs … and against Defendants … as a matter of law on Plaintiffs' claims of declaratory judgment, quiet title, and ejectment with respect to the publicly recorded Access Easement that is the subject of this litigation.

Order, 5/15/25, at 1 (unpaginated). Judge Wagner further ordered

> that Defendants shall remove all obstructions installed by Defendants or their predecessors which exist within the Access Easement to allow Plaintiffs the unfettered use of the Access Easement for access to the rear (westerly) portion of the Waldman Property.

*Id.*

Judge Wagner's order included "[t]he following paragraph … meant to be illustrative though by no means exhaustive of" her reasoning:

> I believe that the legal conclusions set forth in the Memorandum and Order entered December 27, 2024[,] stand contrary to Pennsylvania law. The record in this case is replete with the acknowledgement that Plaintiffs possess a duly recorded and valid Access Easement. The record further confirms that Plaintiffs seek to utilize this Access Easement for purposes connected with the ingress and egress of the rear portion of their property. That Defendants seek to deny Plaintiffs the use of the Access Easement and that Defendants have caused structures to be placed impeding the unfettered use of the Access Easement is likewise confirmed in the record. Yet, contrary to what this [c]ourt understands the governing legal standards to be, the Memorandum and Order appears to be predicated upon concepts such as "reasonability" and "immediate need," imposing additional requirements upon the Plaintiffs that impermissibly diminish the rights which they contractually bargained for and acquired in the recorded Access Easement. Therefore, I found the December 27, 2024, Memorandum and Order to be legally infirm to such an extent and degree that it merited a [JNOV].

- 12 -

*Id.* at 1-2 (unpaginated).

The Luketiches timely appealed. Judge Wagner did not order the Luketiches to file a statement of matters complained of on appeal under Pa.R.A.P. 1925(b). Judge Wagner filed a detailed opinion under Rule 1925(a).

The Luketiches present the following questions for our review:

1. Whether Judge Wagner's May 15, 2025, order of court, which vacated Judge Della Vecchia's December 27, 2024, memorandum opinion and order and entered [JNOV] in favor of the Plaintiffs, was contrary to the coordinate jurisdiction doctrine?

2. Whether Judge Wagner committed an error of law and/or abused her discretion in entering [JNOV] in favor of the Waldmans' claims of declaratory judgment, quiet title[,] and ejectment?

3. Whether Judge Della Vecchia's decision dismissing the [Waldmans]' complaint and affirming that the Waldmans had not met the requirements imposed by the 1985 Declaration and/or by Pennsylvania law for their proposed actions was supported by the record?

4. Whether Judge [] Wagner committed an error of law and/or abused her discretion in determining that the Plaintiffs[] had not failed to preserve a motion for [JNOV] because Plaintiffs[] did not move for a directed verdict at trial?

Luketiches' Brief at 7 (some capitalization modified).

In their first issue, the Luketiches argue Judge Wagner's order vacating Judge Della Vecchia's decision and entering JNOV violated the coordinate

- 13 -

jurisdiction doctrine.[10]  Luketiches' Brief at 24-28.  The Luketiches argue the

Pennsylvania Supreme Court

> has long recognized that under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions.   The coordinate jurisdiction rule is premised on the sound jurisprudential policy of fostering finality in pre-trial proceedings, thereby promoting judicial economy and efficiency.   This rule applies equally to civil and criminal cases and it falls within the "law of the case" doctrine.

*Id.* at 24 (quoting ***Riccio v. Am. Republic Ins. Co.***, 705 A.2d 422, 425 (Pa.

1997) (internal citations omitted)).  As the Luketiches observe, the law of the

case doctrine includes the rule that, "upon transfer of a matter between trial

judges of coordinate jurisdiction, the transferee trial court may not alter the

resolution of a legal question previously decided by the transferor trial court."

*Id.* at 24-25 (quoting ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa.

1995)).

> The Luketiches cite ***Ivy Hill***, which provides that
>
> [d]eparture from the coordinate jurisdiction rule "is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed."  [***Starr***, 664 A.2d] at 1332.

***Ivy Hill***, 310 A.3d at 754; ***see also*** Luketiches' Brief at 25.  The Luketiches

maintain that, instantly,

---

[10] "The issue of whether a court's order or decision violates the coordinate jurisdiction rule is a question of law.  Thus, our standard of review is de novo." ***Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.***, 310 A.3d 742, 754 (Pa. 2024).

there has been no change in the law, nor has there been a change in fact. Thus, the **only** basis for Judge Wagner's decision must be the judge's determination Judge Della Vecchia's decision was "clearly erroneous" **and** that following it would create "a manifest injustice."

Luketiches' Brief at 26 (emphasis in original; some capitalization modified).[11]

The Luketiches assert Judge Wagner's decision "point[s] to nothing in" Judge Della Vecchia's decision "that was **both** 'clearly erroneous' **and** 'manifestly unjust.'" **Id.** at 27 (emphasis in original). Rather, the Luketiches argue, "[f]ar from being clearly erroneous, Judge Della Vecchia's decision is the only proper outcome if the recorded instruments are interpreted to their proper effect." **Id.** at 27-28.[12]

The Waldmans counter that the coordinate jurisdiction rule does not apply to a substituted judge hearing post-trial motions, where the trial judge is unavailable. Waldmans' Brief at 30-33. The Waldmans rely on this Court's recent decision in **Bratina v. Bunting**, ___ A.3d ___, 2025 WL 2788182 (Pa. Super. filed October 1, 2025). In **Bratina**, we noted

that the coordinate jurisdiction rule provides that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." **Riccio**, 705 A.2d at 424 (quoting **Starr**, 664 A.2d at 1329). But importantly, once a trial has concluded, Pennsylvania Rule of Civil Procedure 227.1 allows a trial judge to

---

[11] The Luketiches do not assert Judge Wagner overturned or otherwise disregarded any factual finding or credibility determination made by Judge Della Vecchia. **See** Luketiches' Brief at 24-28.

[12] The Luketiches' reasons for asserting Judge Della Vecchia's decision was correct and Judge Wagner's decision was erroneous are detailed below, in connection with their second and third issues.

order a new trial to correct a mistake of law or fact made at an earlier stage of the proceedings. *See* Pa.R.C.P. 227.1.

This ability of a court to correct a factual or legal mistake survives the substitution of the presiding judge who erred. ***See Riccio***, 705 A.2d at 425. Under Rule 227.2, a successor judge may consider post-trial motions, without deference to the rulings of a prior judge at an earlier stage of the case, if the prior jurist cannot consider the motions "for any reason":

> All post-trial motions and other post-trial matters shall be heard and decided by the trial judge unless the trial judge orders that the matter be heard by a court *en banc* of which the trial judge shall be a member. If the trial judge for any reason cannot hear the matter, another judge shall be designated to act.

Pa.R.C.P. 227.2; ***see also Borough of Jefferson v. Bracco***, 635 A.2d 754 (Pa. Cmwlth. 1993) ("Nothing in Pa.R.C.P. 227.2, or any other rule of civil procedure, limits the discretion or options for post-trial relief that may be granted or denied by a designated judge acting on behalf of an unavailable trial judge. The rule places the designated judge in the shoes of the trial judge.").

Our Supreme Court also has clarified that Rule 227.2 allows a substituted judge to rule on the merits of post-trial motions in the first instance, without being bound by prior rulings of a prior judge made at a different procedural stage of the case:

> Rule 227.2 allows for the substitution of a judge on behalf of an unavailable trial judge, thereby placing the substituted judge in the same position as the trial judge. Based on these factors, we find that the post-trial motion process is a clearly distinct procedural posture from that of the trial judge rendering a verdict at the conclusion of a non-jury trial. Therefore, **because the post-trial motion process is distinct procedurally from that of rendering a verdict following a non-jury trial and because the considerations of the judge are different at each procedural stage** (rendering a verdict at the conclusion of trial versus correcting mistakes made during the earlier trial process), **we hold that <u>the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions</u>**

**from correcting a mistake made by the trial judge during the trial process.** To hold otherwise and not allow a judge deciding post-trial motions to overrule legal errors made during the trial process (whether made by the reviewing judge or another judge who presided over the trial) would render the post-trial motion rules meaningless[,] and the post-trial motion process would become nothing more than an exercise in futility.

*Riccio*, 705 A.2d at 425-26 (emphasis added).

Accordingly, the coordinate jurisdiction rule does not impede a substituted judge from ruling on the merits of a post-trial motion, even where it may result in the striking of a verdict entered by a prior trial judge in a bench trial. ***See id.***

*Bratina*, 2025 WL 2788182, *5-6 (some citations modified).

In *Bratina*, the appellant brought claims for ejectment, trespass, and declaratory judgment, in connection with a boundary dispute. *Id.* at *1. Following a non-jury trial, the trial judge entered a verdict in the appellant's favor and against the appellee (the former owner who sold the subject property to the appellant). *Id.* at *3. The trial judge "retired shortly after entering the verdict, prior to consideration of the parties' post-trial motions." *Id.* The appellee's post-trial motion contended the appellant had presented no competent or admissible evidence of damages, but rather relied on a hearsay document and the appellant's improper lay opinion regarding her property's value. *Id.* A substituted judge granted the appellee's post-trial motion and struck the verdict, concluding the appellant "did not present any competent or admissible evidence in support of an award of damages." *Id.*

- 17 -

On appeal, we determined the coordinate jurisdiction doctrine did not apply:

> At the time when [the substituted judge] began presiding in the case to consider the parties' post-trial motions, the case was in a new procedural posture. Under the reasoning of **Riccio**, as well as under Rules 227.1 and 227.2, [the substituted judge] had authority to consider the parties' post-trial motions and to grant relief if the grounds raised therein were found to have merit. To the extent that [the trial judge] found [the a]ppellant's evidence of damages to be admissible, [the substituted judge] was free to correct such a ruling if it was erroneous.

*Id.* at *6.[13] After rejecting the appellant's coordinate jurisdiction argument, we proceeded to consider her substantive evidentiary claim. We concluded the substituted judge's evidentiary ruling was erroneous, and accordingly vacated the order striking the verdict. *Id.* at *6-8.

Instantly, in her Rule 1925(a) opinion, Judge Wagner addressed her decision to enter JNOV despite not having presided over the trial:

> Though I did not have the benefit of presiding over the non-jury trial that led to [Judge Della Vecchia's] Memorandum and Order filed on December 30, 2024, the record and transcript offer a clear explanation of the facts on which I base my decision. Because of the detail of the record, my "newness" to this case (taking over from [Judge Della Vecchia] for post-trial motions) did not place me at any disadvantage[,] since my ruling did not hinge on a perception of the credibility of witness[es]. The facts which I did find and on which my ruling is based are located largely on the

---

[13] The **Bratina** Court noted the trial judge "had entered a verdict in favor of [the a]ppellant, but no findings of fact or conclusions of law were made in support of that ruling." **Bratina**, 2025 WL 2788182, *6. We further observed that because "it does not appear from the record that [the trial judge] ever made a specific finding regarding the credibility of [the a]ppellant's testimony," the substituted judge "would not have been bound to find [the a]ppellant credible." *Id.*

- 18 -

face of the recorded instruments offered into evidence by the parties. Those facts show—consistent with Plaintiffs' case—the Defendants to be in active interference with Plaintiffs' property rights, particularly with respect to the use of [the Easement]….

….

I did not take my task lightly. Issuing a JNOV on a case that [has been] ongoing since 2020[,] and which will require Defendants to undertake significant actions at great expense[,] is a drastic judicial act. "Monday-morning quarterbacking[]" the decision of a learned, respected jurist is an unenviable position in which to find oneself. Nevertheless, the law relied upon by [Judge Della Vecchia] did not support [his] ruling. Nor did the facts in evidence. … Thus, encountering this situation, after having the benefit of oral argument between the parties, and having devoted considerable time to the reading and re-reading of the record, I found myself mandated by the law to make the ruling I did.

Judge Wagner Opinion, 8/17/25, at 1-2 (unpaginated).[14]

We agree with the Waldmans that the coordinate jurisdiction doctrine did not impede Judge Wagner from ruling on the merits of the Waldmans' post-trial motion, even where her ruling overturned Judge Della Vecchia's verdict. **See Bratina**, 2025 WL 2788182, *6. A substituted judge hearing post-trial motions is placed "in the same position as the trial judge" and is not "bound by prior rulings of a prior judge made at a different procedural stage of the case[.]" **Id.** at *5. **Bratina** makes clear that, in a situation like the instant one, the coordinate jurisdiction doctrine provides no independent grounds for appellate relief, even where this Court may ultimately conclude

---

[14] Judge Wagner's opinion did not explicitly address the coordinate jurisdiction doctrine. As noted **supra**, the Luketiches were not ordered to file a concise statement of matters complained of on appeal.

the substituted judge's decision was erroneous. ***See id.*** at *6-8. Accordingly,

the Luketiches' first issue merits no relief.

The Luketiches' second issue contends Judge Wagner's decision was

erroneous, while their third issue maintains Judge Della Vecchia's decision was

correct.[15] We consider these issues together, first with respect to the

Easement, then, separately, with respect to the setback restrictions. Before

delving into the issues, we review the applicable legal principles.

> We will reverse a trial court's grant or denial of a request for [JNOV] only when we find an abuse of discretion or an error of law. ***Reott v. Asia Trend, Inc.***, 618 Pa. 228, 55 A.3d 1088, 1093 (2012); ***Dooner v. DiDonato***, 601 Pa. 209, 971 A.2d 1187, 1193 (2009). An award of [JNOV] is appropriate only if, reading the record in the light most favorable to the appellees as the verdict winners, and affording them the benefit of all reasonable inferences, we would conclude that there is insufficient competent evidence to sustain the verdict. ***Pennsylvania Dep't of Gen. Servs. v. U.S. Mineral Products Co.***, 587 Pa. 236, 898 A.2d 590, 604 (2006).

***Rost v. Ford Motor Co.***, 151 A.3d 1032, 1042 (Pa. 2016).

Where a challenge to the trial court's grant of JNOV presents a pure

question of law, "our standard of review is *de novo* and our scope of review is

_____

[15] The argument section of the Luketiches' brief does not correspond with their second and third questions presented. ***See*** Luketiches' Brief at 7, 28-44; ***see also*** Pa.R.A.P. 2119(a) ("The argument [section of an appellant's brief] shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein…."); ***Lackner v. Glosser***, 892 A.2d 21, 29 (Pa. Super. 2006) ("Appellate arguments which fail to adhere to these rules may be considered waived[.]"). However, the organization of the Luketiches' argument does not impede our review, and we address their arguments as presented in their brief.

plenary." **Rounick v. Neducsin**, 231 A.3d 994, 1000 (Pa. Super. 2020) (citation omitted). Interpretation of deeds and other recorded instruments "presents a pure question of law; thus, we review the trial court's construction of [instruments] *de novo*." **Sensenig v. Greenleaf**, 325 A.3d 654, 659 (Pa. Super. 2024) (citation and quotation marks omitted).

> The law on the interpretation of easements is clear. A right of way is an easement, which may be created by an express grant. **See Merrill v. Mfgrs. Light and Heat Co.**, 409 Pa. 68, 73, 185 A.2d 573, 575 (1962). "To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. …" **Id.**

**Amerikohl Mining Co.**, 860 A.2d at 550. "The nature and quantity of the interest conveyed by" a recorded instrument "must be ascertained from the instrument itself." **Starling v. Lake Meade Prop. Owners Ass'n, Inc.**, 162 A.3d 327, 341 (Pa. 2017) (citation omitted).

"When reviewing an express easement, the language of the agreement, unless ambiguous, controls." **Baney v. Eoute**, 784 A.2d 132, 136 (Pa. Super. 2001) (citation omitted). A term in an easement is ambiguous if it is "susceptible of more than one reasonable interpretation." **Id.** (citation omitted). "[W]hether a written instrument is ambiguous" is a question of law. **Pennsylvania Elec. Co. v. Waltman**, 670 A.2d 1165, 1169 (Pa. Super. 1995) (citation omitted). "With respect to unambiguous [instruments], a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol [evidence]." **Id.** (citation omitted).

Ambiguous words [in an easement] are construed in favor of the grantee. ***Merrill***, 185 A.2d at 575. "Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances." ***Id.*** at 576 (citation and quotation marks omitted).

***Amerikohl Mining Co.***, 860 A.2d at 550 (citations modified).

"An easement is defined as: '[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.'" ***Stanton v. Lackawanna Energy, Ltd.***, 886 A.2d 667, 676 n.7 (Pa. 2005) (quoting BLACK'S LAW DICTIONARY, 8th ed.).

It is beyond cavil in Pennsylvania that a [servient] property owner may use his property only in ways that do not interfere with the rights of the easement holder. ***See Minard Run Oil Co. v. Pennzoil Co.***, 419 Pa. 334, 214 A.2d 234, 235 (1965) ("The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement." (citation omitted)); ***Mercantile Library Co. of Phila. v. Fid. Trust Co.***, 235 Pa. 5, 83 A. 592, 595 (1912) ("The grant of a fee, subject to an easement, carries with it the right to make any use of the servient soil that does not interfere with the easement…." (citation omitted)).

***Starling***, 162 A.3d at 343. "The owner of the servient estate may not interfere with the free and full use of the easement granted, even though the owner of the easement may have an alternative route." ***Hann v. Saylor***, 562 A.2d 891, 894 (Pa. Super. 1989) (citation omitted).

We now turn to the instant Easement, addressing first the Luketiches' argument that the 1985 Declaration compels a decision in their favor.

Luketiches' Brief at 28-31. The Luketiches maintain that, as Reversionary

Owners of the Luketich Property under the 1985 Declaration, they have the

right to control the removal of trees, the location of improvements, and the

construction of driveways on their property. *Id.* at 30.

Section 4 of the 1985 Declaration (titled "RESTRICTIONS, ETC.") sets

forth the following restrictive covenants:

> 4.2 <u>Native Growth</u>. The native growth and natural habitat of Parcels 1, 2, 3 and 4 [(the Luketich Property)] in the Stoecklein Plan … shall not be permitted to be disturbed, destroyed or removed, **except as approved in writing, by Stoecklein[16] for so long as Stoecklein remains the owner of Parcel No. 4 in the Stoecklein Plan … and thereafter by the then Owner of Parcel No. 4 … (Stoecklein, or the then Owner of Parcel No. 4 is hereinafter referred to as the "Reversionary Owner").** In the event such growth is removed, except as stated above, the Reversionary Owner may require the replanting or replacement of same, the cost thereof to be borne by the Owner of the Lot from which such growth has been removed.
>
> * * *
>
> 4.12 <u>Plans and Construction</u>.
>
> A. All plans for construction of private roads and driveways and all buildings or structures to be erected upon Parcels No. 1, 2, 3 or 4 in the Stoecklein Plan … and the proposed location thereof and any changes after approval thereof and any remodeling, reconstruction, alteration or addition to the building, road, driveway or other structure upon said Parcels No. 1, 2, 3 or 4 in the Stoecklein Plan … shall require written approval of the Reversionary Owner….

1985 Declaration, §§ 4.2, 4.12 (emphasis and footnote added).

---

[16] The 1985 Declaration defined "Stoecklein" as referring to the Stoeckleins, husband and wife. *See* 1985 Declaration at 1 (unpaginated).

The Luketiches assert the Waldmans intend "to clear cut" trees on the Luketich Property, within the Easement, and "dump a gravel road on it." ***Id.*** The Luketiches contend these actions violate their rights as Reversionary Owners under the 1985 Declaration, and that these rights "are dispositive of this dispute." ***Id.*** at 30, 31. The Luketiches argue Judge Wagner erred and abused her discretion in not considering the 1985 Declaration in connection with the Waldmans' rights under the Easement. ***Id.*** at 31. Though the Luketiches do not explicitly argue that Judge Della Vecchia's decision was based on an application of the 1985 Declaration, their brief suggests as much. ***See id.*** at 7 (third question presented, quoted ***supra***), 22-23 ("Judge Della Vecchia understood the meaning of these recorded instruments," including the 1985 Declaration).

The Waldmans counter that Judge Della Vecchia's analysis did not mention the 1985 Declaration. Waldmans' Brief at 53-54 (citing Judge Della Vecchia Opinion, 12/27/24, at 11-12). The Waldmans argue their complaint sought only a general declaration of their rights under the Easement, and maintain they "did not seek the trial court's approval in this action of any proposed improvements to the Access Easement[,] nor did they request that the trial court evaluate the appropriateness of any proposed construction." ***Id.*** at 54. The Waldmans note the Luketiches filed no counterclaims and have no separate claims for declaratory judgment. ***Id.*** The Waldmans assert "the Luketiches' objections to the anticipated use of the Access Easement by the

Waldmans are, at best, premature and unripe for judicial review." ***Id.*** The Waldmans contend the Luketiches' argument that the 1985 Declaration bars certain improvements within the Easement—such as cutting trees or building a road—is speculative and would require this Court to render an improper advisory opinion. ***Id.*** at 55. The Waldmans argue the Luketiches are attempting "to divert these proceedings to a determination of the manner in which the Waldmans might use the Access Easement," but that such questions "are not before this Court, are not relevant, and are not justiciable herein." ***Id.***

Alternatively, the Waldmans argue the 1985 Declaration does not control the Easement's development. ***Id.*** at 56-60. The Waldmans maintain the 1985 Declaration applies only to parcels within the original Stoecklein Plan, which did not include the Waldman Property. ***Id.*** at 58. The Waldmans assert that Stoecklein Plan No. 3, which created the Easement, did not incorporate the 1985 Declaration. ***Id.*** Further, the Waldmans argue the 1992 Agreement selectively incorporated only limited portions of the 1985 Declaration—not including Section 4.12, which references the construction of driveways.[17] ***Id.*** at 60-61. The Waldmans argue the 1992 Agreement "expressly provides for

_____

[17] The 1992 Agreement provided that "Parcels A-1 [(the Waldman Property)] and B-1 [(the Luketich Property)] shall not be used in contravention to the covenants and restrictions set forth in Section 4.1 through 4.11" of the 1985 Declaration. 1992 Agreement, § 4. "For the purposes of this Agreement, the owners of Parcel A-1 and B-1 shall share the responsibilities of the Reversionary Owner as pertaining to Parcel A-1." ***Id.***

the paving and use of the Access Easement[,] subject only to the cost thereof being paid by 'the owner(s) who intend to utilize said [Access Easement] in proportion to their use thereof.'" *Id.* at 60 (quoting 1992 Agreement, § 3) (emphasis omitted).

Finally, to the extent the 1985 Declaration may apply to development of the Easement, the Waldmans maintain they also enjoy the status of Reversionary Owners. *Id.* at 61-62. The Waldmans argue the 1992 Agreement designated them as Reversionary Owners of the Waldman Property. *Id.* at 62. They further argue that the Waldman Plan's slight alteration of the boundary between the parties' properties means the Waldman Property now includes a small portion of Parcel No. 4 (the original Stoecklein property, later the Luketich Property), which the Waldmans contend grants them authority as Reversionary Owners, "jointly with the Luketiches," over all the parcels in the original Stoecklein Plan, including the Luketich Property. *Id.* at 62. The Waldmans therefore maintain the Luketiches do not have unilateral authority as Reversionary Owners within the Easement, but that "[s]uch authority must be exercised jointly with the Waldmans and, in any event, may not be unreasonably exercised." *Id.*

Initially, our review discloses that Judge Della Vecchia's decision was not, and cannot have been, based on the 1985 Declaration. As the Waldmans point out, Judge Della Vecchia's analysis does not reference the 1985 Declaration. *See* Judge Della Vecchia Opinion, 12/27/24, at 11-12. Further,

Judge Della Vecchia's opinion makes no mention of the Waldmans' purported plans to cut trees or build a road within the Easement. ***See generally id.*** To the contrary, in perhaps his only statement that can be considered a factual finding beyond the parties' stipulated facts, Judge Della Vecchia stated, "**the Waldmans admitted that they have no immediate plans to improve the undisturbed portions of the** [**E**]**asement**." ***Id.*** at 11 (emphasis added). This statement forecloses the Luketiches' proposed disposition under the 1985 Declaration. Such a disposition must necessarily be based on specific plans to improve the Easement—plans that implicate the 1985 Declaration's restrictive covenants, but lack approval from the Reversionary Owner. As Judge Della Vecchia's decision was not based on the 1985 Declaration, the Luketiches' request that Judge Della Vecchia's decision "be reinstated" is inconsistent with their argument that the 1985 Declaration is dispositive. Luketiches' Brief at 23.

We agree with the Waldmans that they did not seek the trial court's approval for any specific plans to improve the Easement. Regardless of whether the Waldmans do, in fact, intend to build a road or cut trees within the Easement, our review of their complaint confirms that they did not request a declaration authorizing any such specific plans. ***See generally*** Complaint, 8/14/20. Moreover, our review of the trial court judges' respective orders confirms that neither judge made any declaration regarding improvements in the Easement. ***See generally*** Judge Della Vecchia Opinion, 12/27/24; Judge

Wagner Order, 3/15/25. Neither judge analyzed the 1985 Declaration in connection with the Waldmans' rights in the Easement, and neither made any factual findings germane to such an analysis.[18] *See generally* Judge Della Vecchia Opinion, 12/27/24; Judge Wagner Opinion, 8/17/25. For this Court to reach the question of the 1985 Declaration's application, as the Luketiches urge, we would not only have to jettison the sole factual finding Judge Della Vecchia rendered, but we would also have to engage in our own fact-finding on an issue that neither trial court judge addressed. This we decline to do, especially because Judge Della Vecchia's sole factual finding is one the

_____

[18] In her Rule 1925(a) opinion, Judge Wagner stated that

> the record is replete with Plaintiffs' stated reasons for wanting to develop a gravel access road over a portion of the [E]asement. Plaintiffs' plans in this respect are more than hypothetical or aspirational. Plaintiffs properly complied with rigorous requirements established by a local government land-use board.

Judge Wagner Opinion, 8/17/25, at 2; *see also id.* at 3 (stating the Waldmans "wish to construct a road to access the rear of their large, spacious property where they intend to construct a guest house."). Judge Wagner made these statements in the course of an alternative analysis in which she assumed that, as the Luketiches argued, the Waldmans were required to prove "reasonableness" as a pre-condition of their use of the Easement. *Id.* at 2-3. Judge Wagner opined that the Waldmans' reasons for wanting to build a road in the Easement were reasonable. *Id.* at 3. However, these statements are *dicta*, as they are unnecessary to Judge Wagner's determination that the Waldmans were not required to prove "reasonableness" as a pre-condition of their use of the Easement, and we do not rely on them. **Judge Wagner's disposition is thus consistent with Judge Della Vecchia's finding that the Waldmans have no immediate plans to improve the Easement.** Judge Wagner's May 15, 2025, order entering JNOV in the Waldmans' favor makes no mention of a road or any other improvements. *See* Judge Wagner Order, 3/15/25.

Waldmans have conceded, to their own detriment.[19]  We agree with the Waldmans that the 1985 Declaration's application to specific improvements in the Easement is not ripe for decision in this action.  We therefore reject the Luketiches' argument that Judge Wagner erred in not considering the 1985 Declaration in connection with the Waldmans' rights under the Easement.

Next, we address the Luketiches' argument that the Easement limited the Waldmans to one access road, and that the Waldmans' long-existing driveway fulfilled the purpose of the Easement.  Luketiches' Brief at 32-38.  The Luketiches maintain the Easement and the 1992 Agreement afford the Waldmans "access" to their property via the Easement.  *Id.* at 32.  The Luketiches contend the 1992 Agreement refers to the construction of three access roads, including (1) Sweet Water Lane and (2) the Extension, which the Stoeckleins agreed to construct.  *Id.* at 33 (citing 1992 Agreement, § 3).  The 1992 Agreement further states, "As between the owners of Parcels A-1

_____

[19] By insisting they neither sought nor received the trial court's approval for any particular improvements in the Easement, *see* Waldmans' Brief at 54-55, the Waldmans cannot hereafter claim that Judge Wagner's order authorizes them to immediately build a road or otherwise improve the Easement.  Though the Waldmans have prevailed in this litigation regarding their general right to *use* the entire Easement, they essentially concede that the ultimate question of whether and how they may *improve* the Easement—including whether and how the 1985 Declaration applies—will require future litigation (assuming the parties remain at loggerheads).  We render our instant decision with this concession in mind.  As set forth below, we affirm Judge Wagner's decision as to the Waldmans' general rights under the Easement, but interpret that decision as making no declaration regarding the 1985 Declaration's application, if any, to particular improvements in the Easement.

and B-1, the initial paving and construction of the [Easement] shall be the responsibility of the owner(s) who intend to utilize said [Easement], in proportion to their use thereof." *Id.* (quoting 1992 Agreement, § 3).

The Luketiches maintain the Easement and the 1992 Agreement "clearly" and unambiguously "indicate the intent of the parties" that only one access road was to be constructed through the Easement to afford access to the Waldman Property. *Id.* at 35. The Luketiches assert the Waldmans' driveway, constructed across the southeast corner of the Easement shortly after the Waldmans acquired the Waldman Property, fulfilled the purpose of the Easement. *Id.* at 33-34. The Luketiches argue this driveway affords the Waldmans the requisite access, and "[s]uch has been the status quo for decades." *Id.* at 34.

Alternatively, the Luketiches argue that if the scope of the Easement is deemed ambiguous, the Waldmans would be entitled only to "reasonable and necessary use of the [Easement] within the purpose of the [E]asement and the intention of the original parties to the grant." *Id.* at 35 (citing *Zettlemoyer*, 657 A.2d at 926). The Luketiches assert the Waldmans' long-existing driveway satisfies these criteria, and that any additional use is unreasonable and unnecessary. *Id.* at 37-38.

The Luketiches rely on *Sigal v. Manufacturers Light & Heat Co.*, 299 A.2d 646 (Pa. 1973), in which an easement authorized the grantee to construct a pipeline. Decades later, the grantee sought to construct an

additional pipeline, parallel with the first. ***Signal***, 299 A.2d at 647. Our Supreme Court determined "the written instrument granting easement rights in this case is ambiguous," because it referred to a pipeline (singular) and lines (plural) in a grammatically incorrect manner. ***Id.*** at 649. The Supreme Court held the second pipeline was not authorized, as evidence surrounding the written instrument's drafting showed the parties specifically struck out a reference to a second pipeline. ***Id.*** at 650. The Luketiches maintain that, "[m]uch like the [grantee] in ***Signal*** was not entitled to a second pipeline, the Waldmans are not entitled to build a second access point to the Waldman Property in light of the circumstances." Luketiches' Brief at 37.[20]

The Waldmans counter that neither the Easement nor the 1992 Agreement contain any restrictions on the number of access points the Waldmans may use. Waldmans' Brief at 38-39, 60. The Waldmans maintain that, "[a]t its creation in Stoecklein Plan No. 3, the Access Easement was unrestricted except to its purpose [('Access & Utility')], size [(40 feet),] and location on the Luketich Property." ***Id.*** at 38. The Waldmans assert that the Luketich Property "is the servient tenement impressed with a permanent easement of access for ingress and egress and the installation of utilities over and along the entire right of way area as described in Stoecklein Plan No. 3." ***Id.*** at 38-39. The Waldmans argue the 1992 Agreement merely provided for

---

[20] The Luketiches' argument on the scope of the Easement does not explicitly reference Judge Della Vecchia's analysis. ***See*** Luketiches' Brief at 32-38.

the allocation of road construction costs, and "does not limit, confine or restrain access over the Access Easement in any manner or to any location…." *Id.* at 60.

The Waldmans assert that neither the Luketiches nor Judge Della Vecchia have identified any authority in support of Judge Della Vecchia's conclusion that the Waldmans must demonstrate an "immediate need" in order to use the Easement. *Id.* at 44; *see also id.* at 43 (citing *Croyle v. Dellape*, 832 A.2d 466, 476 (Pa. Super. 2003) ("The fact that the [plaintiffs] have no plans to develop their lots does not change the fact that they have an immediate right to access those lots through [the subject easement].")). Rather, the Waldmans argue Judge Wagner properly determined the law imposes no such requirement. *Id.* at 43-44. The Waldmans further argue that Judge Della Vecchia erred in determining the Waldmans' right to use the Easement was limited to their pre-existing driveway, and that their right to use the entire Easement cannot be extinguished simply because they previously used only part of it. *Id.* at 44-46, 49-50. The Waldmans maintain Judge Wagner correctly determined they had the right to use the entire Easement. *Id.* at 45.

In support of her decision to enter JNOV, Judge Wagner set forth the following legal analysis regarding the Easement:

> [Judge Della Vecchia] specifically found[,] and the Defendants concede[,] that the Stoecklein Plan No. 3 created an express forty-foot access easement along the common property line of the Waldman Property and the Luketich Property[,] which lies entirely

- 32 -

within the confines of the Luketich Property and which remains a valid and enforceable encumbrance upon the Luketich Property. *See* Joint Stipulation, 12/11/24, ¶¶ 17(ii)(c), 17(iii)(a), 18. Thus, the record on which [Judge Della Vecchia] ruled did not contain any dispute as to the creation of, the location of, the purpose of, nor the boundaries of the Access Easement. Yet, inexplicably, the Defendants prevailed on all claims.

I reluctantly concluded the decision of Judge Della Vecchia to be clearly erroneous and without legal support[,] wherein he concluded that Plaintiffs must first demonstrate an immediate need to use the Access Easement. This [] burden upon the holders of dominant estates is not found anywhere within Pennsylvania law[,] and thus imposing it upon Plaintiff[s] in this situation[, and] under these facts[,] constituted reversible error, which I corrected through my Order.

The Access Easement in question is an express easement, which is unambiguously described on Stoecklein Plan No. 3[,] and which is unrestricted except as to its purpose, size and location on the property. … In considering how to interpret and apply the Access Easement, I am guided by the principle that the nature and quantity of the interest conveyed by a deed "must be ascertained from the instrument itself." *Starling*, 162 A.3d at 341. Pennsylvania law on easements does not require that the dominant tenement of an express easement first demonstrate a particular need to utilize an easement in accordance with the grant[,] but rather holds that any actions which obstruct an express easement owner's full use permitted under his or her easement, constitute substantial interference with the easement owner's rights under the easement. *Hann*, 562 A.2d at 894. Indeed, the "owner of the servient estate may not interfere with the free and full use of the easement granted, even though the owner of the easement may have an alternative route." *Id.* at 894.

[Judge Della Vecchia] improperly considered Plaintiffs' "immediate need" or the "reasonableness" of the use of the Access Easement. This placed [Judge Della Vecchia] at odds with a plethora of appellate authorities on this subject. In fact, the cases cited in the [Judge Della Vecchia's] opinion do not stand for the proposition for which they are ostensibly cited or [his] ultimate holding … with respect to the use and enjoyment of the Access Easement. Having read both *McNaughton Properties, LP* … and

*Zettlemoyer* …, I must conclude that neither case holds that an easement holder must demonstrate an <u>immediate need</u> to use the easement when considering if the servient tenement has interfered with the dominant tenement's right to unfettered access of the entire easement.

Neither Defendants nor [Judge Della Vecchia] cite any authority or facts which authorize the Defendants to build obstructions in the path of the Access Easement; rather, they incorrectly, in my view, shifted the burden to Plaintiffs to justify Plaintiffs' "need" for the rights indisputably granted to them in the written instruments, and to which Defendants' property is subject, as a matter of title and law…. The Access Easement in question is an express easement which was unambiguously described on Stoecklein Plan No. 3 as a forty-foot wide access and utility easement. *See* Joint Stipulation, 12/11/24, ¶¶ 17-18; Exhibit E (Stoecklein Plan No. 3); Exhibit F (Revised Stoecklein Plan No. 3); Exhibit G (Revised Stoecklein Plan No. 3, Amended). By virtue of the specific creation of the Access Easement, the Luketich Property is the servient tenement impressed with a permanent easement for ingress, egress, and regress and the installation of utilities over and along the entire right-of-way area described on the Stoecklein Plan No. 3. The Waldman Property is the dominant tenement benefiting from the Access Easement. N.T., 12/12-13/24, at 157-159, 160-162. Thus, I concluded that [Judge Della Vecchia] failed to apply the appropriate legal standard as established throughout Pennsylvania caselaw when considering Plaintiffs' claim that [they] possess[] a right to unfettered use of the Access Easement, **as determined by Plaintiffs**, to access [the Waldman Property via] ingress and egress over the [Luketich] Property.

[Judge Della Vecchia's] opinion on this issue contravenes well established Pennsylvania law, seeking to impose a condition that the dominant estate prove a need to utilize an expressly granted easement. This is not the holding of either *McNaughton* or *Zettlemoyer*. It is also not a concept that is supposed by any of the expert testimony offered at trial through citation to any governing authorities. Rather, I agree with Plaintiffs that … *Croyle* … clearly expresses the correct standard that should have been applied by [Judge Della Vecchia]: a dominant tenement holder's right to use an express easement is not contingent upon demonstrating an "immediate need to use the easement." *Croyle*, 832 at 476. A reading of *Croyle* vitiates Plaintiffs' legal

assertions. The presence or absence of an immediate need to exercise that right does not negate its existence. That is the law of Pennsylvania. [Judge Della Vecchia] did not apply that law to the detriment of Plaintiffs. …

Judge Wagner Opinion, 8/17/25, at 6-8 (unpaginated) (emphasis in original; some citations modified).

Judge Wagner continued her analysis as follows:

Moreover, [Judge Della Vecchia] appeared to compound [his] existing error by implying that Plaintiffs, the holders of the dominant estate, lack the ability or right to use the entirety of the express easement conferred upon them. This, too, stands contrary to Pennsylvania law, which holds that, when an easement is expressly granted, the scope of the easement is determined by the language of the easement itself and the dominant estate holder has the right to use the entire easement to its fullest extent to facilitate their enjoyment of their property[,] unless the language of the easement agreement imposes a specific limitation on its use. **Berwick Twp. v. O'Brien**, 148 A.3d 872, 883 (Pa. Cmwlth. 2016). Stated another way, while a servient tenement has the right to use his property subject to the easement, this use cannot interfere with the use and enjoyment of the easement by the dominant tenement. **Pineda v. Perry**, 244 A.3d 1240, 1248 (Pa. Super. 2020). Absent such restrictions, the dominant estate holder (in this case the Plaintiffs) has the right to use the entire easement for the purpose intended.

Rather, as I read the governing authorities, the disposition of this dispute in favor of Plaintiffs required the affirmative answer to three straightforward questions that are provided for in the factual record. First, is the Waldman Property the dominant estate? Second, is it the intention of the Plaintiffs to utilize the Access Easement for purposes of accessing the Waldman Property? Third, do the structures constructed by Defendants impede or obstruct the rights provided for by the Access Easement as set forth in the recorded instrument? Since the answer is "yes" to all three queries, the application of clear Pennsylvania law renders this an easy decision, which, as noted above, is not predicated on credibility determinations, a view of the at-issue properties, or any other perceptions otherwise unique to [Judge Della Vecchia].

The acknowledged evidence of record confirms that the Access Easement consists of a forty-foot wide easement along the entirety of the boundary line of the Waldman Property and the Luketich Property for the purpose of providing access. Specifically, the Stoecklein Plan No. 3 created the Access Easement to permit Plaintiffs and the owners of Parcel C to access their property and install utilities. Because the Access Easement was created by the recorded plan, Plaintiffs acquired rights over the entirety of the Access Easement. **There are no limitations in the documents that restrict Plaintiffs' use to only a portion of the Access Easement or which preclude Plaintiffs from enjoying multiple access points to the Waldman Property.** Nevertheless, [Judge Della Vecchia's] ruling suggested that Plaintiffs cannot use the entirety of the [E]asement because they have made only partial use historically of the … Easement. Such a determination contravened the established caselaw that **"the scope of an easement is not diminished because the owner of the benefited land failed to immediately use the easement to the fullest extent allowable."** *Zettlemoyer*, 657 A.2d at 926 (quoting *Lease v. Doll*, 403 A.2d 558, 563 n.9 (Pa. 1979)) [(emphasis added)]. The caselaw teaches that the fact that the purpose of the easement might be accomplished in less than the whole area dedicated to the easement does not empower the servient tenement the right to deny the dominant tenement[] access to the entire easement area. Indeed, in *Zettlemoyer*, one of the two cases relied upon by [Judge Della Vecchia], an easement holder who used only 100 feet of a broader easement was not prevented from expanding the use an additional 30 feet. *Id.* Accordingly, [Judge Della Vecchia's] ruling … must have been based upon either an incorrect interpretation of the scope of the Access Easement or a misinterpretation of the relevant caselaw, since there was no evidence or language in the Stoecklein Plan No. 3 suggesting any restrictions on the use of the <u>entire</u> easement simply because Plaintiffs historically made partial use of the Access Easement.

Judge Wagner Opinion, 8/17/25, at 8-9 (unpaginated) (underline emphasis in original; bold emphasis added; some citations modified).

We agree with Judge Wagner's analysis. Our review of the relevant instruments confirms her conclusion that those instruments set forth "no

limitations … restrict[ing] Plaintiffs' use to only a portion of the Access Easement or … preclud[ing] Plaintiffs from enjoying multiple access points to the Waldman Property." *Id.* at 8-9. We disagree with the Luketiches that the 1992 Agreement's reference to road construction unambiguously limited the Waldmans to one access road. Rather, we agree with Judge Wagner that it unambiguously contained no such limitation. Our review confirms the Waldmans' argument that the 1992 Agreement did not purport to authorize the construction of the Waldmans' access road, but rather simply allocated responsibility for the cost of said construction. 1992 Agreement, § 3. In fact, the 1992 Agreement's reference to "the *initial* paving" in the Easement contemplates the possibility of additional paving. *Id.* (emphasis added).

We further agree with Judge Wagner that Judge Della Vecchia's analysis lacks legal support. We observe that the Luketiches' brief does not explicitly defend that analysis, and cites no authority suggesting the Waldmans must demonstrate an "immediate need" to use the Easement. Regarding necessity, the Luketiches rely on ***Zettlemoyer*** for the proposition that, "where an easement is ambiguous, the grantee shall have 'reasonable and necessary' use of the right of way within the purpose of the easement and the intentions of the original parties to the grant." ***Zettlemoyer***, 657 A.2d at 926; ***see also*** Luketiches' Brief at 35. However, Judge Della Vecchia did not determine that the Easement is ambiguous, and we agree with Judge Wagner that it is not.

For similar reasons, the Luketiches' reliance on *Sigal* is unavailing. The *Sigal* Court resolved an ambiguity as to whether an easement authorized one or two pipelines. *See Sigal*, 299 A.2d at 649-50. The instant Easement and related instruments did not ambiguously reference one or more access points, but rather unambiguously established a 40-foot right of way without reference to any particular number of access points.

We agree with Judge Wagner that the Waldmans have the right to use the entire Easement for access and utilities, regardless of necessity. The undisputed facts of record dictate this legal conclusion. We observe that Judge Wagner's disposition did not rely on any facts contrary to those found by Judge Della Vecchia. *See* n.18 *supra*. Even when the record is viewed in the light most favorable to the Luketiches, the same disposition is required. We therefore conclude Judge Wagner appropriately entered JNOV in the Waldmans' favor regarding the scope of the Easement.

Next, we turn to the Luketiches' arguments regarding the setback restrictions. Luketiches' Brief at 39-46. The Luketiches argue the 1985 Declaration and 1992 Agreement "provide that the location of any buildings, structures, fence, hedge, out building, or appurtenance of any nature shall not be closer than 75 feet from the *sidelines* or *rear property lines* of any parcel [in] the Stoecklein Plan." Luketiches' Brief at 39-40 (citing 1985 Declaration, § 4.4; 1992 Agreement, § 4) (emphasis in original). The Luketiches maintain that, because their house's front door "faces a southerly direction towards the

boundary line with the Waldman Property," the at-issue boundary line is not a sideline or rear property line, and accordingly the 75-foot setback restrictions do not apply. *Id.* at 40.

The Luketiches further assert that Judge Wagner erred in not considering their several equitable defenses. *Id.* at 39, 41-44. The Luketiches argue the doctrines of equitable estoppel and waiver bar Waldmans from objecting to structures within the setback line because, at the time the parties executed the Waldman Plan, the Waldmans "did not object to the location of the gate post on the Luketich Property, even though it was located less than 75 [feet] from the common property line." *Id.* at 41. The Luketiches further assert the doctrine of laches bars the Waldmans from objecting to structures within the setback because they "did not raise any objection to the location of structures on the Luketich Property until after the February 2019 fire." *Id.* at 44. Finally, the Luketiches maintain the doctrine of unclean hands bars the Waldmans from enforcing the setback restrictions against the Luketiches because the Waldmans "themselves are violating [the setback line] with their fence, which is also less than" 75 feet from the property line. *Id.* at 44. The Luketiches argue that "[a]ny one of these equitable defenses prohibit the Waldmans from enforcing the setback rules contained in the 1985 Declaration against the Luketiches." *Id.*

The Waldmans counter that Judge Wagner's opinion properly concluded that the Waldmans established the setback under [Section] 4.4 of the 1985 Declaration, that the Luketiches'

obstructions within the Access Easement violated the setback as established under [Section] 4.4 …, and that [Judge Della Vecchia] "would have had no sound basis to have denied the applicability of Section 4.4 to the facts presented…."

Waldmans' Brief at 65 (quoting Judge Wagner Opinion, 8/17/25, at 10 (unpaginated)).  The Waldmans maintain "[i]t is evident that Judge Wagner considered the potential defenses which may have precluded enforcement of [Section] 4.4[,] but found them to be insufficient to deny relief which was clearly merited."  *Id.* at 65-66.  The Waldmans argue the Luketiches failed to establish any of their equitable defenses.  *Id.* at 66-71.[21]

Before reaching the parties' arguments, we must first determine the extent to which *either* trial court judge actually ruled on the Waldmans' setback claims.  The Luketiches baldly assert, without citation, that "Judge Della Vecchia appropriately disposed of the Waldmans' setback claims…." Luketiches' Brief at 39.  The Waldmans counter that Judge Della Vecchia's opinion "is entirely silent as to" the setback claims.  Waldmans' Brief at 63. Our review confirms Judge Della Vecchia's opinion and order makes no mention of any facts germane to the setback claims and sets forth no analysis or conclusion touching on them.  *See generally* Judge Della Vecchia Opinion, 12/27/24.  Without ever mentioning the setback claims, Judge Della Vecchia nevertheless dismissed the Waldmans' complaint in its entirety.  *Id.* at 12.

---

[21] In light of our disposition of this issue, we need not detail these arguments.

In her Rule 1925(a) opinion, Judge Wagner determined Judge Della Vecchia erred in failing to adjudicate the setback claims:

> [Judge Della Vecchia] did not render an adjudication as to the Defendants' violations of the applicable setbacks, with [his o]pinion notably silent on this issue[,] despite record evidence that the Defendants have erected, installed or maintained numerous encroachments, most notably the erection and re-construction of a garage and a gymnasium structure that violated the applicable setback requirements. *See* Exhibit S (Waldman FMG Survey, 9/20); Exhibit W (photos of the parties' properties); Exhibit Y (Waldman FMG Survey, 12/9/24); N.T., 12/12-13/24, at 24-28, 91, 140, 254-255). Failure to rule on this issue constituted error…. Pennsylvania Rule of Civil Procedure 1038 provides that, in a bench trial, "the decision of the trial judge … shall dispose of all claims for relief. The trial judge may include as part of the decision specific findings of fact and conclusions of law with appropriate discussion." Pa.R.C.P. 1038(b); ***Bensinger v. Univ. of Pittsburgh Med. Ctr.***, 98 A.3d 672, 684 (Pa. Super. 2014).

Judge Wagner Opinion, 8/17/25, at 9-10 (unpaginated) (record citations modified). After setting forth an analysis in which she determined the Luketiches violated Section 4.4's setback restrictions, Judge Wagner's opinion concluded that Judge Della Vecchia

> would have had no sound basis to have denied the applicability of Section 4.4 to the facts presented [at trial]. Accordingly, since [Judge Della Vecchia] did not issue a ruling on an issue which clearly merited relief being afforded to Plaintiffs, I appropriately entered a [JNOV] on the setback issue to do that which [Judge Della Vecchia] should have done in the first instance.

Judge Wagner Opinion, 8/17/25, at 9-10 (unpaginated).

We agree with Judge Wagner that Judge Della Vecchia did not address the Waldmans' setback claims. However, our careful review of Judge

- 41 -

Wagner's May 15, 2025, order discloses that **Judge Wagner also did not clearly address the setback claims, and granted no relief on them**.

Judge Wagner's May 15, 2025, order granted the Waldmans' motion for post-trial relief, vacated Judge Della Vecchia's opinion and order, and entered JNOV

in favor of Plaintiffs … and against Defendants … as a matter of law on Plaintiffs' claims of declaratory judgment, quiet title, and ejectment **with respect to the publicly recorded Access Easement that is the subject of this litigation**.

Order, 5/15/25, at 1 (unpaginated) (emphasis added). Judge Wagner further ordered

that Defendants shall remove all **obstructions** installed by Defendants or their predecessors which exist **within the Access Easement to allow Plaintiffs the unfettered use of the Access Easement** for access to the rear (westerly) portion of the Waldman Property.

*Id.* (emphasis added). The order did not mention the setback restrictions or Section 4.4 of the 1985 Declaration. Rather, it referenced only the Easement. Its directive that the Luketiches "remove all obstructions" is limited to those existing within the 40-foot Easement. The directive's stated purpose is to allow the Waldmans to use the Easement. It does not apply to structures that are within 75 feet of the property line but outside the 40-foot Easement, including, notably, the Luketiches' garage and gymnasium.

The language of the May 15, 2025, order notwithstanding, Judge Wagner's Rule 1925(a) opinion set forth the following analysis:

Paragraph 4.4 of the 1985 Declaration expressly provides that "[n]o buildings, structure, fence, hedge … of any nature shall be located closer than 75 feet from the sidelines and rear property lines of Parcels No. 1, 2, 3 and 4 in the Stoecklein Plan of Lots." Therefore, as correctly shown by Plaintiffs, the owner of Parcel B-1 [(*i.e.*, the Luketiches)] in the Stoecklein Plan No. 3, formerly Lot 4 in the Stoecklein Plan of Lots, is expressly prohibited from constructing or installing a fence or hedges, among other things, within 75 feet of the [s]outhern boundary line of former Lot 4[,] which runs along the demarcated parameters before reaching the southeast corner of Parcel B-1. [The trial record] shows that Plaintiffs presented evidence that Defendants are in violation of Section 4.4 of the 1985 Declaration. *See* Joint Stipulation, 12/11/24, ¶¶ 9, 15; Exhibit B (1985 Declaration); N.T., 12/12-13/24, at 202-206. **The Plaintiffs sought the immediate removal of all obstructions with[in] the Access Easement which violate the 75-foot setback**. The evidence shows that Plaintiffs voiced objections to these alleged encroachment[s] at the time of their placement and that they have continued to object. *Id.* at 31. Defendants refused to relocate the allegedly offending structures to a location outside of the 75-foot setback. *Id.* at 90-92. Indeed, Defendant's expert conceded that nothing has changed the parties' enforcement rights as provided under the 1985 Declaration[]. *Id.* at 205-207.

….

The only equivocation on the record appears to be whether the applicable setback is 75 or 100 feet; regardless, **the obstructions which Defendants have erected and allowed within the Access Easement run afoul of the setback requirements of Section 4.4** meriting their immediate removal. Plaintiffs' claims on this issue were properly before [Judge Della Vecchia]. Plaintiffs established [the] existence of the setback requirements from the written instruments and proved that Defendants placed obstructions within the parameters of the setbacks….

Judge Wagner Opinion, 8/17/25, at 9-10 (unpaginated) (emphasis added).

Confusion over Judge Wagner's ruling is evident in the parties' briefs.

The Waldmans contend the Luketiches waived their arguments regarding

- 43 -

obstructions within the 40-foot Easement by focusing on structures outside the Easement yet within the 75-foot setback. Waldmans' Brief at 64. The Waldmans maintain that, despite finding the Luketiches violated the 75-foot setback, Judge Wagner

> ordered only that the Luketiches remove offending structures which were located within the 40-foot Access Easement itself[,] **generously allowing the Luketiches' newly rebuilt garage and gymnasium located within the 75-foot setback to remain** despite their clear violation of the setback requirement.

*Id.* (emphasis added). Meanwhile, the Luketiches suggest the Waldmans are trying to "resurrect[]" their setback claims for structures outside the Easement. Luketiches' Reply Brief at 10-12. The Luketiches note Judge Wagner did not order the removal of any structures outside the Easement, and the Waldmans did not appeal her order. *Id.* at 12.

Our review confirms that Section 4.4's 75-foot setback restrictions have nothing to do with the Easement (which did not exist when the 1985 Declaration was adopted) or any other easement. 1985 Declaration, § 4.4. Its restrictions applied to all parcels in the original Stoecklein Plan, and later applied to the Waldman Property upon its incorporation into the 1992 Agreement. *Id.*; *see also* 1992 Agreement, § 4. The restrictions are not designed to protect any owner's right to use any portion of another owner's parcel. 1985 Declaration, § 4.4. The term "obstruction" is not used in Section 4.4, and it is unclear whether "obstruction" would be a natural term to describe a setback violation. *Id.*

As summarized above, the parties' arguments over the removal of obstructions within the Easement are presented as arguments about Section 4.4's setback restrictions. Neither party suggests that, despite the analysis set forth in her Rule 1925(a) opinion, Judge Wagner's order did not actually grant any relief in connection with those restrictions. As our review confirms this is the case, we decline to address the parties' setback arguments.

Rather, we construe Judge Wagner's directive that the Luketiches "remove all obstructions" within the Easement to be relief granted in connection with the Waldmans' Easement claims. When it is viewed in this way, we discern no error or abuse of discretion in Judge Wagner's grant of relief, and the Luketiches identify none.[22] **See Croyle**, 832 A.2d at 469-72 (affirming trial court's order directing defendants to remove encroachments partially obstructing an easement, even though plaintiffs could still reach their lots through the unobstructed portion and had no plan to develop the lots); **Hann**, 562 A.2d at 894 ("The owner of the servient estate may not interfere with the free and full use of the easement granted, even though the owner of the easement may have an alternative route."); **Scoppa v. Myers**, 491 A.2d

_____

[22] The Luketiches do not argue their equitable defenses to the setback claims applied to the Easement claims, and their argument that the parties' common boundary line is not the Luketich Property's sideline or rear property line is irrelevant to the Easement claims. The Luketiches contest the Waldmans' right to use the entire Easement, but advance no argument in the alternative that—assuming the Waldmans had a right to use the entire Easement—the form of relief granted was inappropriate.

148, 150 (Pa. Super. 1985) (where "plaintiffs had an easement over a twenty[-]foot right of way," "[i]t was error … to limit their use to only fifteen feet thereof. … Similarly, it was error to permit partial obstruction thereof to continue."); *Kinzey v. Marolt*, 432 A.2d 234, 235-36 (Pa. Super. 1981) (holding trial court erred in ordering removal of obstructions from only half of a 50-foot-wide street, where the appellant had an easement over the street's entire width; this Court ordered removal of obstructions from the entire street, noting that even though part of the street "has never been opened or dedicated to a public use," the appellant "could open and improve [it] at any time").

Though the setback analysis set forth in Judge Wagner's opinion does not comport with the language of her May 15, 2025, order, we nevertheless affirm that order in its entirety.[23]  For all of the foregoing reasons, the Luketiches' second and third issues merit no relief.

_____

[23] Though the May 15, 2025, order did not explicitly address or grant relief on the setback claims, we deem it a final, appealable order.  **See** Pa.R.A.P. 341(b)(1) ("A final order … disposes of all claims and of all parties.").  The order purported to grant in full the Waldmans' post-trial motion (which advanced, *inter alia*, their setback claims), and entered JNOV on "Plaintiff's claims of declaratory judgment, quiet title, and ejectment" (albeit without differentiating between their four declaratory judgment counts and three quiet title counts, one of each of which involved the setback).  Judge Wagner Order, 3/15/25, at 1 (unpaginated).  The order did not decide any claims against the Waldmans, and did not purport to leave anything undecided.  Rather, it purported to fully resolve the action.  We construe the order as entering JNOV in the Waldmans' favor on all of their claims, but without granting relief as to all of them.  Neither party has questioned the order's finality.  To the extent
*(Footnote Continued Next Page)*

In their fourth and final issue, the Luketiches argue the Waldmans waived their right to request JNOV in their post-trial motion because they did not move for a directed verdict at trial. Luketiches' Brief at 45-46. The Luketiches assert that, "[t]o preserve its right to seek [JNOV] based on the sufficiency of the evidence, the movant is required to seek a directed verdict after the close of all the evidence." *Id.* at 45 (citing *Youst v. Keck's Food Service, Inc.*, 94 A.3d 1057, 1071 (Pa. Super. 2014)). The Luketiches maintain "[t]his rule is consistent with the philosophy and spirit of [Pa.R.C.P.] 227.1(b)[,] which provides that post-trial relief may not be granted unless the grounds therefor were raised by motion at trial." *Id.* The Luketiches argue that because the Waldmans did not move for a directed verdict under Pa.R.C.P. 226, they waived their right to request JNOV in their post-trial motion. *Id.* at 45-46.

The Waldmans counter that they preserved their JNOV claim under Pa.R.C.P. 227.1(b)(1) by raising it in their **pre-verdict** proposed findings of fact and conclusions of law. Waldmans' Brief at 71-73. The Waldmans note that, upon the close of evidence at trial, Judge Della Vecchia "instructed the parties to submit proposed findings of fact and conclusions of law." *Id.* at 72. The Waldmans maintain they "complied with [those] instructions by timely

_____

the Waldmans may be aggrieved by Judge Wagner's failure to grant relief as to any of their claims, we observe that they treated the order as final and did not appeal it.

- 47 -

submitting" their proposed findings of fact and conclusions of law, "which thoroughly discussed, and thereby preserved, each of the issues raised in" their subsequent post-trial motion. *Id.* at 72-73.

Rule 227.1 provides, in pertinent part, as follows:

(a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision; or

(5) enter any other appropriate order.

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, **request for findings of fact or conclusions of law**, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1 (emphasis added); *see also* Pa.R.C.P. 226(b) ("At the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any party.").

Historically, "[w]here the trial court did not find waiver of the appellant's post-trial motion for JNOV and addressed the issue, we have declined to find waiver." *Bank of Am., N.A. v. Scott*, 271 A.3d 897, 903 n.4 (Pa. Super.

- 48 -

2022) (citing ***Wag-Myr Woodlands Homeowners Ass'n by Morgan v. Guiswite***, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018)). In ***Wag-Myr Woodlands***, we noted the appellant

> did not request a directed verdict orally or in writing at the close of evidence at trial. Ordinarily, to preserve the right to request [JNOV], a party must first request a binding charge to the jury or move for a directed verdict or compulsory non-suit. ***Phelps v. Caperoon***, 190 A.3d 1230 (Pa. Super. 2018) (citation omitted). A motion for a directed verdict is appropriate even in the non-jury trial context. ***Id.*** at 1247. Here, despite [a]ppellant's failure to move for a directed verdict or otherwise preserve its right to seek [JNOV], the trial court did not find waiver and instead addressed the issue. Accordingly, we decline to find waiver. ***See Capital Care Corp. v. Hunt***, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where a party failed to move for a directed verdict, sought [JNOV] in a post-trial motion, and the trial court addressed the claim as presented in the post-trial motion).

***Wag-Myr Woodlands***, 197 A.3d at 1250 n.10; ***see also Scott***, 271 A.3d at 903 n.4 (same).

Instantly, because the trial court did not find waiver and addressed the Waldmans' JNOV claim on its merits, we decline to find waiver.[24] ***See Wag-Myr Woodlands***, 197 A.3d at 1250 n.10. We therefore need not consider whether the Waldmans' proposed findings of fact and conclusions of law sufficiently preserved the claim under Rule 227.1(b)(1). The Luketiches' fourth and final issue merits no relief.

Judgment affirmed.

---

[24] Judge Wagner's opinion did not address the waiver issue.

- 49 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  2/18/2026